IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**MARY M. MILLER,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　　**Civil Action No. 3:17-cv-04485**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9) and Defendant's Brief in Support of Defendant's Decision (ECF No. 12). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act.

### Background

Claimant, Mary M. Miller, filed applications for DIB on March 31, 2014, and SSI on March 18, 2014. Claimant alleged disability beginning July 5, 2012. The claims were denied initially on June 2, 2014, and upon reconsideration on November 7, 2014. Claimant filed a request for hearing on December 29, 2014. A video hearing was held on August 16, 2016. Claimant appeared in Portsmouth, Ohio, and the Administrative Law Judge presided over the hearing from Cincinnati, Ohio. The Administrative Law Judge (ALJ) denied Claimant's applications on October 14, 2016. On December 14, 2016, Claimant sought review of the ALJ's decision by the Appeals Council. The Appeals Council denied Claimant's request for review on October 5, 2017 (Tr. at 1-6).

Subsequently, On October 10, 2017, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920 (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
>> (1)   Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>> (2)   We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See

3

> 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation:
>> Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental

disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section. 20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since July 5, 2012, the alleged onset date (Tr. at 20). Claimant meets the insured status requirements of the Social Security Act through March 31, 2017. (*Id.*) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments: disorders of the cervical and lumbosacral spines; migraines; status-post bilateral carpal tunnel release surgeries; gastroesophageal reflux disease (GERD); gastritis; an ulcer; depression; anxiety; and post-traumatic stress disorder (PTSD). (*Id.*) At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 21). The ALJ then found that Claimant has a residual functional capacity to perform medium work except: occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; avoid all exposure to workplace hazards, such as dangerous machinery and unprotected heights; frequent handling, fingering, feeling and overhead

reaching with the bilateral upper extremities; no outdoor jobs and no jobs in loud or very loud environments as defined in the DOT/SCO; limited to simple, routine tasks; capable of frequent interaction with coworkers, supervisors and the public; limited to low-stress jobs, defined as occasional decision-making and occasional changes in the work setting; no fast-paced production or quota type jobs; and off task 10% of the workday (Tr. at 23). The ALJ found that Claimant is unable to perform past relevant work (Tr. at 27). The ALJ found that Claimant is able to perform medium level work such as laundry laborer and stacker (Tr. at 28-29). Additionally, the ALJ found that Claimant is able to perform light level work such as a rental clerk, counter clerk and hostess (Tr. at 29). On this basis, Claimant's application was denied (Tr. at 29-30).

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

Claimant was born on May 26, 1968. She was 48 years old on the date of the ALJ's decision. Claimant last completed the ninth grade (Tr. at 50).

### Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows:

Shortly after the alleged onset date, Claimant sought emergency treatment for migraine headaches at St. Mary's Medical Center Emergency Department on July 23, 2012, August 7, 2012, and September 5, 2012 (Tr. at 298-305). Claimant received medication to control her pain and anti-nausea medication to treat her associated symptoms (Tr. at 298-305). Claimant underwent treatment at Valley Health Systems for various maladies from September 2012 through May 2016, including flu-like symptoms, neck pain and diarrhea (Tr. at 330-355, 526-558, 702-720).

Claimant was examined by Martha A. Fernandez, Psy.D., a psychologist at Marshall Psychiatry and Behavioral Medicine, on November 21, 2013 (Tr. at 326). Claimant stated that three family members had died within the past five years and that her "wild ass children can't keep themselves out of jail." (*Id.*) She stated that she was unable to find a job and that one of her sons was in jail for murder. (*Id.*)

On examination, Claimant was oriented, had normal motor activity, made good eye contact but appeared tearful with a dysphoric mood (Tr. at 329). Claimant had coherent speech, reported transient suicidal ideation, had no impairments with memory or recall and had fair insight. (*Id.*) Dr. Fernandez diagnosed chronic PTSD and recommended Claimant undergo dialectical behavior

therapy. (*Id.*)

On November 29, 2013, Claimant saw Zachary H. Hansen, M.D., at Valley Health Systems, and complained of having neck pain and diarrhea for three months (Tr. at 347). On examination, Dr. Hansen noted that Claimant had limited range of motion of her neck (Tr. 348). He diagnosed diarrhea and cervicalgia and advised Claimant to obtain treatment by a chiropractor. (*Id.*)

Rida Mazagri, M.D., at Marshall Health, treated Claimant's carpal tunnel syndrome during the relevant period. On December 10, 2013, a nerve conduction test revealed evidence of mild median mononeuropathy of both wrists (Tr. at 456). On January 9, 2014, Claimant returned to Valley Health Systems complaining of vomiting and having watery stool (Tr. at 341). Dr. Hansen diagnosed essential hypertension and diarrhea and ordered lab work to determine the cause of Claimant's symptoms (Tr. at 343). On February 14, 2014, Claimant underwent a colonoscopy at Marshall Health which revealed internal hemorrhoids (Tr. at 659-660).

On March 7, 2014, Dr. Mazagri performed a carpal tunnel release of Claimant's right wrist (Tr. at 439). On March 18, 2014, Claimant saw Dr. Mazagri for her first post-operative visit and reported doing very well. Claimant reported incisional pain but denied experiencing any numbness (Tr. at 435).

On March 24, 2014 and April 3, 2014, Plaintiff underwent two counseling sessions with Dr. Fernandez (Tr. at 322-325). Dr. Fernandez treated Claimant with development of ongoing crisis survival strategies and distress tolerance skills to resolve her grief and trauma symptoms (Tr. at 323).

On March 25, 2014, approximately three weeks after her right wrist carpal tunnel release surgery, Claimant stated that she was doing very well and reported that she was still having some

pain because she was "overdoing" her activities (Tr. at 432). On examination, Claimant's right wrist had no swelling, redness, or tenderness and her range of motion was "as to be expected" (Tr. at 432). Dr. Mazagri concluded that Claimant was doing very well (Tr. at 432).

On April 7, 2014, Dr. Mazagri performed a carpal tunnel release of Claimant's left wrist (Tr. at 423). Claimant returned to Valley Health Systems on April 11, 2014, for follow-up of her hypertension (Tr. at 337). She stated that she could "not be happier with the results" of her bilateral carpal tunnel surgeries and stated that a recent colonoscopy revealed no abnormalities. (*Id.*) Claimant denied having headaches and experiencing side effects from her medications. (*Id.*) Due to Claimant's continued complaints of abdominal pain, Dr. Hansen referred Claimant for an abdominal ultrasound study (Tr. at 339). The ultrasound revealed no abnormalities (Tr. at 350).

On April 17, 2014, Claimant reported experiencing some numbness in her wrist and pain in her thumb (Tr. at 420). On April 22, 2014, Claimant reported to Dr. Mazagri that her right hand was good but her left hand was still falling asleep (Tr. at 416). Dr. Mazagri stated that Claimant reported mild discomfort of her left hand but noted that Claimant still had a fresh incision (Tr. at 418). Claimant had good strength of her upper extremities with some residual tingling. (*Id.*)

On May 3, 2014, Uma Reddy, M.D., a state agency physician, reviewed the evidence of record and completed an assessment of Claimant's ability to perform physical work activities (Tr. at 71-72). Dr. Reddy found that Claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and walk six hours in an eight-hour workday and sit for six hours during an eight-hour workday (Tr. at 71). She found that Claimant could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes and scaffolds. (*Id.*) On October 2, 2014, William Bolz, M.D., a second state agency physician, reviewed the evidence of record and affirmed Dr. Reddy's assessment (Tr. at 94-95).

On May 19, 2014, Mark Subik, M.D., of Holzer Clinic, examined Claimant for her complaints of chronic diarrhea (Tr. at 479). Claimant reported that her diarrhea occurred after eating (Tr. at 480). Dr. Subik noted that her symptoms did not seem to result from infection or inflammation and instead seemed to be IBS from underlying anxiety issues. (*Id.*) Dr. Subik prescribed Bentyl to treat her symptoms. (*Id.*)

Lisa C. Tate, M.A., performed a mental status examination of Claimant on May 27, 2014 (Tr. at 482- 487). Claimant was oriented during the examination, had a euthymic mood and a board and reactive affect (Tr. at 484). She had a logical and coherent thought process, fair insight, normal judgment, normal memory and only mildly deficient concentration. (*Id.*) Ms. Tate opined that Claimant had normal social functioning, persistence and pace (Tr. at 485). She diagnosed Claimant with major depressive disorder, single episode. (*Id.*)

Claimant saw Dr. Hansen on September 15, 2014, and reported vomiting and having diarrhea "after everything she eats" (Tr. at 556). She reported that Bentyl helped her symptoms and that she was getting married that weekend so her stress had increased. (*Id.*) Dr. Hansen diagnosed hypertension, GERD and irritable bowel syndrome (IBS) and referred Claimant for a CT scan of her abdomen and pelvis (Tr. at 558). Claimant failed to show up for her next five appointments with Dr. Hanson from September 2014 through January 2015 (Tr. at 551-555).

On October 29, 2014, Michael Black, M.D., of Holzer Clinic, examined Claimant and noted that she had a pleasant mood and affect, full range of motion of her extremities, a normal gait, no evidence of muscle atrophy and normal deep tendon reflexes (Tr. at 500). Due to continued complaints of ongoing diarrhea, Claimant was instructed to return to Dr. Subik for follow-up treatment. (*Id.*)

On November 7, 2014, Claimant returned to Dr. Subik and reported doing well other than continuing to have diarrhea (Tr. at 497). Dr. Subik told Claimant to increase her Bentyl to six pills per day and add Imodium up to three pills per day. (*Id.*)

A CT scan of Claimant's abdomen and pelvis performed at Cabell Huntington Hospital on February 3, 2015, revealed no abnormalities (Tr. at 549-550). On February 13, 2015, Claimant saw Dr. Hanson and complained that her stomach issues had gotten worse. Claimant stated that she was depressed due to her stomach problems (Tr. at 545). Dr. Hansen referred Claimant for a CCK-stimulated cholescintigraphy of her gallbladder (CCK) and suggested that if the results were normal that she should undergo a specialized evaluation at the Cleveland Clinic regarding her ongoing diarrhea (Tr. at 547).

On March 9, 2015, Claimant underwent the CCK to determine the ejection fraction of her gallbladder (Tr. at 543). The study results were normal. (*Id.*) On March 13, 2015, Claimant reported to Dr. Hansen that she could only eat if she took anti-nausea medication and stated that an increase in Bentyl (the medication for her IBS) had not helped control her diarrhea (Tr. at 539). Dr. Hansen referred Claimant to Cleveland Clinic for a specialized evaluation. (*Id.*)

On March 26, 2015, Claimant told Dr. Black that her stomach problems had worsened and she believed these problems were related to her nerves (Tr. at 589). Dr. Black diagnosed Claimant with depression and anxiety (Tr. at 590).

Claimant returned to see Dr. Subik in April 10, 2015, and he noted that Claimant's nausea was likely a form of IBS and instructed her to increase her anti-nausea medication (Tr. at 588). On June 23, 2015, Claimant told Dr. Black that she could not keep anything down, including her anti-nausea medication (Tr. at 580). Dr. Black renewed her prescription for anti-nausea medication (Tr. at 581).

Claimant returned to see Dr. Hansen on June 29, 2015, and stated that she had not gone to the Cleveland Clinic because her husband had undergone kidney surgery and she could not afford to go (Tr. at 714). She was still taking Bentyl and anti-nausea medication. (*Id.*) Dr. Hansen instructed Claimant to continue taking her prescribed medications (Tr. at 716).

On September 14, 2015, Dr. Subik performed a gastroscopy with biopsy of Claimant's esophagus that revealed only minor esophageal erosions (Tr. at 745). On October 1, 2015, Claimant reported to Dr. Hansen that she had sought emergency treatment for her vomiting and diarrhea (Tr. at 710). Claimant reported that the testing revealed no abnormalities and the emergency department staff prescribed two anti-nausea drugs that seemed to help her feel better. (*Id.*) She also requested a referral for mental health treatment to see if that helped her symptoms because her kids were "stressing her out." (*Id.*)

Claimant saw Dr. Black on October 8, 2015, with complaints of back pain and asked for a referral to a specialist (Tr. at 571). Dr. Black assessed cervical spine degeneration and degenerative joint disease and referred Claimant for x-rays of her lumbar and cervical spine (Tr. at 572).

On November 18, 2015, Curtis Harrison, M.D., performed an esophagogastroduodenoscopy and took biopsies of Claimant's antrum and esophagus (Tr. at 630). The test revealed moderate gastritis, three small ulcers, a hiatal hernia and esophagitis (Tr. at 626, 630).

Claimant received mental health treatment at Prestera Center, Inc., from December 2015 until July 2016 (Tr. at 668-674, 696-701, 849-889). Claimant underwent a psychiatric evaluation on January 27, 2016, by Rownak Afroz, M.D., and appeared as well groomed, cooperative, pleasant and had normal motor activity and speech (Tr. at 698). She also had an appropriate and broad affect, denied suicidal thoughts, had a goal-directed thought process and appropriate thought

content. (*Id.*) She had intact memory, concentration, insight and judgment. (*Id.*) Dr. Afroz diagnosed depressive disorder due to a medical condition (Tr. at 699).

Claimant continued to receive treatment at Prestera and Dr. Afroz continued to observe that Claimant essentially had good mental status examinations that included appropriate affect; calm motor activity; good attention/concentration; normal speech; intact memory, thought process, judgment and insight (Tr. at 852-853, 857-858, 862-863, 868, 873-874, 878-889).

On February 23, 2016, Claimant reported to Dr. Black that she had sought mental health treatment at Prestera Clinic and had received a prescription for Prozac, but that the medication was not helping her (Tr. at 693). Dr. Black opined that she might be having a manic episode and should contact her psychiatrist at Prestera or, in the alternative, taper down her Prozac (Tr. at 695).

On May 5, 2016, Claimant reported to Dr. Black that the addition of Viberzi helped her IBS symptoms and that she was leaving her husband because he was the source of a lot of her problems (Tr. at 777). On July 30, 2016, Claimant's treating psychiatrist Dr. Afroz, completed a mental status statement of Claimant's ability to perform mental work-related activities (Tr. at 886-887). Dr. Afroz noted that Claimant had mild to moderate impairment and symptoms and a good prognosis (Tr. at 886).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's residual functional capacity (RFC) evaluation did not properly consider all of Claimant's limitations and their severity (ECF N. 9). Claimant argues that the ALJ disregarded the testimony of the vocational expert (VE) who stated that Claimant is incapable of substantial gainful activity if Claimant exceeds certain workplace off-task tolerances. (*Id.*) In response, Defendant asserts that substantial evidence supports the ALJ's assessment of

Claimant's RFC and the ALJ's finding that Claimant retained the ability to perform a significant number of medium level jobs (ECF No. 12).

## Discussion

The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 04.1505(a); *see Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[An impairment] is not necessarily disabling.  There must be a showing of related functional loss.").  The responsibility for determining whether Claimant is disabled resides with the Commissioner.  20 C.F.R. § 404.1527(e)(1).  To be eligible for disability benefits, Claimant bears the burden of showing not only that she has a medically determinable impairment, but that it is so severe that it prevents her from engaging in her past relevant work or any other substantial gainful activity that exists in the national economy for a 12-month period.  42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

## RFC

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p. The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's

impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

The claimant's RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue,* 2011 WL 2688975, at *3 (E.D.Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e). The ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.,* laboratory findings) and nonmedical evidence (*e.g.,* daily activities, observations)." *Id.* (citing SSR 96-8p).

The Court will uphold the ALJ's RFC findings if substantial evidence in the record supports the findings and the ALJ has applied the correct legal standards in reaching them. *Hancock v. Astrue,* 667 F.3d 470, at 472 (4th Cir. 2012). "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir.2013). The Court will "remand to the agency for additional investigation or explanation when we cannot evaluate the record of the basis that underlies the ALJ's ruling." *Fox v. Colvin,* 632 Fed.Appx. 750, 754 (4th Cir.2015) (quoting *Radford,* 734 F.3d at 295).

In this case, Claimant does not specify what limitations, nor what evidence, the ALJ allegedly did not consider when assessing her RFC. However, substantial evidence supports the ALJ's determination and inclusion of limitations in Claimant's RFC that are established by the record. The ALJ considered the evidence from Claimant's treating psychiatrist, Dr. Afroz, and consultative examining physician, Ms. Tate, and included limitations of mental functioning. The ALJ accounted for Claimant's mental impairments by limiting her to work requiring only simple,

15

routine tasks; frequent interaction with others; only occasional decision-making and changes in the work setting; no fast-paced production or quota type jobs; and an accommodation to be off task 10 percent of the day (Tr. at 23).

Additionally, substantial evidence supports the ALJ's finding that Claimant retained the ability to perform medium level work with significant exertional and nonexertional limitations including no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to workplace hazards; no more than frequent handling, fingering, feeling, and overhead reaching; no working outdoors; and no working in loud environments. The limitations are consistent with the evidence of record including findings from Claimant's treating physicians, Dr. Black and Dr. Subik, and the opinions of the reviewing state agency physicians, Dr. Reddy and Dr. Bolz.

<u>Vocational Expert</u>

At the hearing, the ALJ asked a vocational expert whether jobs existed in the regional and national economy for a hypothetical individual with Claimant's age, education, work experience and residual functional capacity. The vocational expert (VE) testified that given all of the factors the individual would be able to perform the requirements of representative occupations at medium level such as laundry laborer and dishwasher (Tr. at 59). The ALJ asked the VE the same hypothetical except the individual was reduced to light exertion (Tr. at 60). The VE testified that the individual would be able to perform the requirements of marking clerk, inspector and routing clerk. (*Id.*) The ALJ asked the VE if there would be any unskilled work if the hypothetical individual was also off-task 15 percent of the time on a workday (Tr. at 60-61). The VE testified that "That would be work-preclusive" (Tr. at 61).

Claimant asserts that her subjective complaints are supported by the objective evidence and the off-task 15 percent of the workday limitation is reasonable (ECF No. 9). Claimant avers that the ALJ prejudiced her and "disregarded the Vocational Expert's response." (*Id.*) Defendant asserts that the ALJ found that Claimant would be off task 10 percent, instead of 15 percent, of the workday (ECF No. 12).

While questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. *Benenate v. Schweiker*, 719 F.2d 291, 292 (8th Cir. 1983). The Fourth Circuit has held, "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." *Grant v. Schweiker*, 699 F.2d 189 (4th Cir. 1983). The proper inquiry under *Grant* is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which she is exertionally capable.

In this case, Ms. Tate's Mental Status Examination noted that Claimant only had mildly deficient concentration and normal persistence and pace (Tr. at 484-485). The Mental Status Examination reflected that Claimant had good attention and concentration (Tr. at 852-889). In addition to substantial evidence supporting the ALJ's RFC determination, Claimant failed to demonstrate that the record supports a limitation of her being off-task 15 percent of the workday. Therefore, the ALJ was not required to adopt limitations other than those included in Claimant's RFC.

Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9), **GRANT** the Defendant's Brief in Support of Defendant's Decision (ECF No. 12), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: October 25, 2018

Dwane L. Tinsley
United States Magistrate Judge